UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PADRES, L.P.,<br><br>           Plaintiff,<br><br>v.<br><br>RIMEL'S LA JOLLA, LLC,<br><br>           Defendant. | Case No.: 3:19-CV-01764 AJB (BLM)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Doc. No. 35)** |

Pending before the Court is Defendant Rimel's La Jolla, LLC's ("Rimel's") motion for summary judgment. (Doc. No. 35.) The motion is opposed by Plaintiff Padres, L.P. ("the Padres"). (Doc. No. 41.) For the reasons set forth below, the Court **DENIES** Rimel's motion for summary judgment.

**I.    BACKGROUND**

This case is a trademark infringement and unfair competition dispute under the Lanham Act brought by the Padres against Rimel's, a former restaurant which operated a concession stand within the Padres' stadium. The Padres, L.P. is the owner of the Major League Baseball team, the San Diego Padres. (First Amended Complaint ¶ 6.) Defendant Rimel's formerly owned and operated a restaurant and a catering business in San Diego, serving potstickers, rotisserie chicken, fresh seafood, and sushi. (*Id.* ¶ 7.) Rimel's is no longer in business in San Diego.

In 2004, the Padres began playing baseball at "Petco Park," located in downtown San Diego. (*Id.* ¶ 9.) Petco Park showcases elements of local landmarks, including the Western Metal Supply Co. building ("Western Metal Building"):



Additionally, the Padres developed and used the "Swinging Friar", depicted below, as a service mark and trade name in various images and in composite designs:



The Padres contend that the name "Western Metal Supply Co." and the "Swinging Friar" have become well-known and associated with Petco Park and the Padres. (*Id.* ¶ 14.) The Padres registered and own both the "Swinging Friar" and the "Western Metal Supply Co." name as a trademark or service mark. (*Id.* ¶ 14.)

The Padres allege that Rimel's and San Diego Ballpark Funding, LLC ("SDBF"), owned by the Padres, entered into a sponsorship agreement ("the Sponsorship Agreement") on February 28, 2014 for Rimel's to open a concession stand on the Western Metal Supply Co. rooftop known as Rimel's Rotisserie. (Declaration of Trevor Coddington, Doc. No.

35-2, Ex. B at 1.) The Sponsorship Agreement was amended on March 15, 2015, to permit another Rimel's branded concession stand at Petco Park known as Zenbu Sushi. (*Id.*, Ex. C.)

During the 2014 to 2016 baseball seasons, Rimel's denoted its Padres' sponsorship on its website and social media platforms. (*Id.*, Ex. A at 31:19-21; 39:16-21; 70:5-13; Ex. D.) In addition to indicating Rimel's Petco Park location, the website displayed the Western Metal Building and Swinging Friar marks. (*Id.*, Ex. A at 18:21-23; 21:4-25.) In 2017, the sponsorship ended, but a graphic (as shown below) inadvertently remained on Rimel's website showing the former Rimel's location at Petco Park. (*Id.*, Ex. A at 39:16-21.)



On January 30, 2018, Rimel's filed suit against SDBF in state court to recover unpaid royalties due under the Sponsorship Agreement. (*Id.*, Ex. F.) The Padres then commenced the present trademark infringement lawsuit in this Court on September 13, 2019. (*Id.*, Ex. A at 57:3-12.) Because Rimel's was no longer in business and the graphic had remained accessible inadvertently, Rimel's immediately shut down its website in response. (*Id.*, Ex. A at 64:2-11.) The First Amended Complaint asserts two claims for relief for (1) trademark infringement (15 U.S.C. § 1114), and (2) federal unfair competition (15 U.S.C. § 1125). On January 8, 2021, Rimel's filed a motion for summary judgment, which the Padres opposed. This order follows.

//

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Where the nonmoving party bears the burden of proof on a matter at trial, the moving party need only demonstrate to the Court that there is insufficient evidence to support the nonmoving party's case. *Id.* at 325. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proof at trial. *See id.* at 322–23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to provide facts showing that a genuine issue of disputed fact remains. *See Celotex*, 477 U.S. at 314. The nonmoving party cannot rest on the mere allegations or denials of its pleading, but must "go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citing Fed. R. Civ. P. 56(c)). When making this determination, the Court must view all inferences

drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587; *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The Court must not weigh the evidence or make credibility determinations in evaluating a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III. DISCUSSION

Rimel's moves for summary judgment, arguing (1) it may not be held liable for trademark infringement because the Padres and Rimel's occupy entirely different industries; and (2) the fair use doctrine shields Rimel's from liability. (Doc. No. 35-1 at 6.) The Court addresses both grounds for summary judgment below but concludes that neither are persuasive.

### A. Trademark Infringement and Unfair Competition

The Padres alleges two claims for federal trademark infringement, 15 U.S.C. § 1114(1)(a), and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A). Both claims are measured by identical standards. *See Brookfield Comm., Inc. v. West Coast Enter. Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). Under these standards, a plaintiff must prove (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011); 15 U.S.C. § 1114.

Here, only the second criteria for trademark infringement and unfair competition is at issue because Rimel's does not dispute that the Padres own the trademarks for the "Swinging Friar" and "Western Metal Supply Co." Rimel's instead focuses on the second "likelihood of confusion" element, arguing that Rimel's previous use of the marks never caused consumer confusion. Central to Rimel's argument is that the Padres and Rimel's are not competitors, and occupy entirely different industries with Rimel's being in the restaurant business, and the Padres being a MLB team. Based on the dissimilarity of industries, Rimel's argues it may not be liable for trademark infringement as a matter of law. In opposition, the Padres contend that the unauthorized use of a mark to imply a

sponsorship or affiliation between the infringer and the owner constitutes trademark infringement. (Doc. No. 41 at 7.) The Court agrees with the Padres.

"Likelihood of confusion" exists if consumers would probably be confused about the source, affiliation, or sponsorship of defendant's goods as the result of its adoption of plaintiff's mark. *See Lindy Pen Co., Inc. v. Bic Pen Corp.*, 725 F.2d 1240, 1243, 1246 (9th Cir. 1984). Rimel's relies on case law stating that trademark infringement under 15 U.S.C. § 1114 requires a plaintiff to show that the "public is likely to be deceived or confused by the similarity of the marks." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988). Rimel's argues that "[i]f the goods are totally unrelated, there can be no infringement because confusion is unlikely." *Id.* Here, Rimel's takes the position that because it is in the restaurant and food business, and the Padres is a baseball team, there is no risk of customer confusion. As Rimel's explains, "[t]here is no evidence in this case that a confused customer who intended to buy a ticket to a Padres game accidentally bought a Rimel's rotisserie chicken instead." (Doc. No. 35-1 at 16.)

In opposing the motion, the Padres offers authority finding trademark infringement where former licensees exceed their permitted use of a licensor's trademark. Specifically, the Padres cite to a Fifth Circuit case, *PGA v. Banker's Life*. *See* 514 F.2d 665 (5th Cir. 1975). In that case, Bankers Life Insurance ("Bankers") financed the construction of a new city, including a golf course and clubhouse that housed the Professional Golfers Association ("PGA") national headquarters for ten years. *Id.* at 667. When the PGA vacated the premises, Bankers refused to remove the PGA initials from the title of the club. *Id.* The PGA sued and the district court found that Bankers had infringed upon the PGA's mark and competed unfairly with it through the continued use of the PGA initials. *Id.* The Fifth Circuit affirmed, concluding that "once the PGA left the premises, Bankers' right to bask in the golfing association's good name ceased," because "[t]he quality of a trademark owner's reputation should lie within his own control." *Id.* at 670–71. "Once the contract ends, a licensee's right to the mark ends, and any subsequent use constitutes infringement." *Id.* at 670. The Padres rely on *PGA* to argue that even though Rimel's and the Padres do

6

not offer the same goods, Rimel's may nevertheless be liable for trademark infringement because Rimel's did not cease use of the Padres' trademark after the termination of the Sponsorship Agreement.

On the narrow issue which Rimel's seeks summary judgment—whether the occupation of different industries precludes liability for trademark infringement—the Padres' position is prevailing. Rimel's cited authority is inapposite because those line of cases address allegations where the defendant copied substantial elements of the plaintiff's trademark. However, this is not the typical trademark infringement case whereby the plaintiff is alleging that the defendant duplicated a similar trademark. Indeed, there are no allegations that Rimel's developed a trademark that resembles the Padres' "Swinging Friar" logo or that Rimel's used a mark which incorporated words similar to "Western Metal Supply Co." Here, it is undisputed that Rimel's ***actually used*** the Padres' registered trademarks even after the parties' Sponsorship Agreement ended.

"[C]ourts have found that such continued use of a franchisors' trademarks following the franchise termination demonstrates not only a strong likelihood of confusion, but is dispositive by itself on the issue of infringement." *See Gen. Motors LLC v. W. Covina Motors, Inc.*, No. CV 15-705-JFW (AGRX), 2015 WL 12762063, at *13 (C.D. Cal. Apr. 13, 2015); *AT&T Corp. v. Vision One SecuritySystems*, No. 95-0565-IEG (BTM), 1995 WL 476251, at *6 (S.D. Cal. July 27, 1995) ("Because the Court finds that Vision One's license to use the AT&T mark was terminated as of February 28, 1995, any use of the mark by Vision One after that date was an unauthorized use."). Furthermore, 15 U.S.C. § 1125 allows a plaintiff to recover for a defendant's unauthorized use of trademarks when that use "is likely to cause confusion, or to cause mistake, or to deceive as to the ***affiliation, connection, or association*** of such person with another person, or as to the origin sponsorship, or approval of his or her goods, services, or commercial activities . . ." (emphasis added).

Here, the likelihood of confusion does not stem from whether the source of baseball or rotisserie chicken is the Padres or Rimel's. Rather, the likelihood of confusion stemmed

from the appearance that Rimel's remained affiliated with the Padres even after the termination of the Sponsorship Agreement. The Padres' grievance is not that Rimel's use of its trademark resulted in Rimel's obtaining an unfair advantage in competing in the baseball industry. Instead, loss of control over its trademark is the Padres' primary concern. Additionally, Rimel's does not explain how this loss of control depends on whether parties are of different industries. "Trademarks serve as the identity of their owners and in them resides the reputation and goodwill of their owners." *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1080 (E.D. Cal.), aff'd, 348 F. App'x 288 (9th Cir. 2009). "If another infringes on a mark, the person borrows the owner's reputation," preventing the trademark owner from exercising control over the quality of its mark and thus "creat[ing] the potential for damage to its reputation." *Id.*

Again, Rimel's seeks summary judgment on the narrow issue of whether it may escape liability because does not compete in the same industry as the Padres. On this narrow question, the Court cannot conclude, as a matter of law, that there was no liability based on the parties' different industries. Thus, summary judgment is **DENIED** on this basis.

### B. Fair Use Doctrine

Next, Rimel's seeks summary judgment on its fair use affirmative defense, arguing that even if Rimel's can be held liable for trademark infringement, the fair use doctrine precludes liability. (Doc. No. 25-1 at 17.) It is undisputed that a Rimel's branded concession stand was located at the "Western Metal Supply Co." rooftop. However, Rimel's contends it used the Western Metal Supply Co. trademark in its primary, descriptive sense to denote Rimel's restaurant location:



The Padres do not dispute that during the time of the parties' Sponsorship Agreement, Rimel's was authorized to display the above graphic on its website. However, the Padres argue that upon the termination of the Sponsorship Agreement, use of the Padres' trademarks improperly implied Rimel's continued affiliation with the Padres. (Doc. No. 41 at 9.)

"Fair use is a mixed question of law and fact." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985). There are two types of fair use: "'classic fair use,' in which 'the defendant has used the plaintiff's mark to describe the defendant's own product,' and 'nominative fair use,' in which the defendant has used the plaintiff's mark 'to describe the plaintiff's product.'" *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002). Here, Rimel's is using the Padres' trademark to advertise and describe Rimel's own services, making this akin to a classic fair use case.

The precise elements of the classic fair use defense are that the defendant (1) is not using the term as a trademark, (2) uses the term only to describe its goods and services, and (3) uses the term fairly and in good faith. *See Cairns*, 292 F.3d at 1151. As to the first and second elements, the allegedly offending graphic incorporating the Swinging Friar and the Western Metal Supply Co. building is not used as Rimel's trademark or logo. Rather, the graphic is being used on its website to describe Rimel's newest location, and when this new location is set to open. Thus, the first and second elements of the defense are satisfied.

However, as to whether the graphic was used fairly and in good faith, this is a question of fact to be left to a jury. Rimel's has not adequately established the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Rimel's argues its use was limited to introducing its new location opening within Petco Park, but this assertion, alone, is insufficient for summary judgment. The question of whether the use of the Padres' mark was fair and in good faith, or whether it was misleading is a question to be answered by a jury. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 609 (9th Cir. 2005) (fair use analysis involves questions of facts); *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1029 (9th Cir. 2000) (disputed factual

issue of consumer confusion also precludes summary judgment as to fair use). Accordingly, the Court also **DENIES** Rimel's motion for summary judgment on its fair use doctrine affirmative defense.

## IV.   CONCLUSION

In light of the foregoing, the Court **DENIES** Rimel's motion for summary judgment. (Doc. No. 35.) The stay on all pretrial deadlines is hereby lifted. The parties are to proceed according to the pretrial schedule set forth in Doc. No. 48.

**IT IS SO ORDERED.**

Dated:  April 27, 2021

Hon. Anthony J. Battaglia
United States District Judge